710 P.2d 642

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Terry METZGAR, aka Wayne Cunningham, Defendant-Appellant.**

No. 15794.

Court of Appeals of Idaho.

Nov. 27, 1985.

Petition for Review Denied
Jan. 29, 1986.

Alan E. Trimming, Ada County Public Defender, Boise, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

Terry Metzgar was convicted of aggravated assault by a jury and was sentenced to the custody of the Board of Correction for an indeterminate term of five years. Metzgar's sentence was enhanced by a five-year consecutive term because he had used a firearm in the assault. On appeal, Metzgar

raises two issues. First, he asserts that the state failed to prove that an operable firearm as defined in I.C. § 19–2520 was used in the assault. Second, he contends that since the aggravated assault involved a firearm, the enhancement of his sentence for using a firearm violated his constitutional right against double jeopardy. We affirm the judgment of conviction.

The record indicates that the victim and her roommate were walking in Boise when the driver of a car pulled over and offered them a ride. The victim and her roommate accepted and, as they got into the back seat of the car, noticed that the female passenger in the front seat was not fully clothed. After going a short distance, the driver let the female passenger in the front seat out of the car. The driver then pointed a pistol at the victim and her roommate and ordered them to undress. The driver touched the victim's chest. The victim and her roommate were then allowed to dress and were dropped off near a bar in Boise. Although her roommate disappeared, the victim contacted the police. Metzgar was later arrested and subsequently identified by the victim as the driver of the car. Because the gun allegedly used was never found, it was not admitted into evidence at trial. A jury found Metzgar guilty of aggravated assault and of using a firearm in the commission of the assault. The judge sentenced Metzgar to an indeterminate term of five years for the aggravated assault and to a consecutive five-year term for using a firearm.

## I

▆ Idaho Code § 19–2520 provides in part:

For the purposes of this section, "firearm" means any deadly weapon capable of ejecting or propelling one or more projectiles by the action of any explosive or combustible propellant, and includes unloaded firearms and firearms which are inoperable but which can readily be rendered operable.

Metzgar argues that since no firearm was admitted into evidence, the state failed to prove that the gun met the operability requirements of § 19–2520. We recently held in *State v. Stedtfeld*, 108 Idaho 695, 701 P.2d 315 (Ct.App.1985) that "circumstantial evidence may be used to show that a firearm is operable." In *Stedtfeld*, as here, the gun was not introduced as evidence. The jury relied only on testimony to decide that the gun was operable. The Washington Court of Appeals, in *State v. Bowman*, 36 Wash.App. 798, 678 P.2d 1273, 1276 (Ct.App.1984), has also addressed this issue and said:

The remaining question raised by Bowman's assignment of error is whether there is sufficient evidence viewed in the light most favorable to the State from which a rational trier of fact could conclude beyond a reasonable doubt that Bowman was armed with a real gun during the commission of these crimes. *State v. Green*, 94 Wash.2d 216, 616 P.2d 628 (1980). The State need not introduce the actual deadly weapon at trial. "The evidence is sufficient if a witness to the crime has testified to the presence of such a weapon, as happened here.... The evidence may be circumstantial; no weapon need be produced or introduced." [State v.] *Tongate*, [93 Wash.2d 751] at 754, 613 P.2d [121] at 121.

The record contains sufficient evidence to support the jury's conclusion: Mrs. C. described the gun in detail and on cross-examination stated that "there was no question in my mind whatsoever" that it was a real gun. Further, the defendant's threats to use the gun added additional credence to the jury's conclusion.

[A defendant's] express verbal threat to "shoot" his victim necessarily implied that he had access to a firearm capable of killing or seriously injuring his victim. We have previously held that a firearm is unambiguously a deadly weapon.

*State v. Hentz*, 99 Wash.2d 538, 541, 663 P.2d 476 (1983).

Although the victim testified in the instant case that she did not know much about guns, she indicated there was no

doubt it was a gun Metzgar had used. The victim said that she observed the gun from a distance of approximately two feet. She testified that Metzgar pointed the gun at her and her roommate while they undressed. She also related that Metzgar opened the cylinder and showed her that the weapon was loaded, and that during the assault he pulled the hammer back. Metzgar at one point also told the victim's roommate that if he ran away, Metzgar would "blow his head off." We believe this evidence clearly was sufficient to allow the jury to reasonably conclude that the gun was operable.

## II

Metzgar next challenges the firearm enhancement of his sentence for two reasons. He points out that using a firearm elevated his crime from a simple assault to an aggravated assault, but using the firearm was also responsible for the sentence enhancement.[1] Therefore, Metzgar urges that this "double enhancement" first violates his constitutional right against double jeopardy. He also contends that it violates I.C. § 18-301, which prohibits more than one punishment for the same act.

## A

■ *Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983), addresses the double jeopardy argument. In *Hunter,* the Court upheld the validity of two Missouri statutes which subjected the defendant to conviction and sentencing for both an underlying felony charge of first degree robbery and a charge for using a deadly or dangerous weapon in the commission of a felony (characterized as "armed criminal action"). The Missouri state court had construed the robbery and armed criminal action statutes as defining the "same offense" under the test announced in *Blockburger v. United States,* 284 U.S.

299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), i.e., where the same act or transaction constitutes a violation of two distinct statutes, the test for determining whether there are two offenses or only one, is whether each statute requires proof of a fact which the other does not. In overruling the Missouri court, the Supreme Court held that the *Blockburger* test was one of statutory construction inapplicable where there is a clear indication of contrary legislative intent. Noting the clear intent of the Missouri legislature, the Supreme Court stated:

Where, as here, a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the "same" conduct under Blockburger, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.

459 U.S. at 368–69, 103 S.Ct. at 679. The Court further held that the double jeopardy clause only prevents the sentencing court from prescribing a sentence greater than what the legislature intended.

Idaho Code § 19-2520, referred to previously, further provides:

Any person convicted of a violation of sections 18-905 (aggravated assault defined), ... who displayed, used, threatened, or attempted to use a firearm or other deadly weapon while committing the crime, shall, in addition to the sentence imposed for the commission of the crime, be imprisoned in the state prison for not less than three (3) nor more than fifteen (15) years. Such additional sentence shall run consecutively to any other sentence imposed for the above cited crimes....

This section shall apply even in those cases where the use of a firearm is an element of the offense.

---

1. Idaho Code § 18-905 defines an aggravated assault as an assault:

    (a) With a deadly weapon or instrument without intent to kill; or

    (b) By any means or force likely to produce great bodily harm.

    (c) With any vitriol, corrosive acid, or a caustic chemical of any kind.

    (d) "Deadly weapon or instrument" as used in this chapter is defined to include any firearm, though unloaded or so defective that it cannot be fired.

We applied the *Hunter* rationale in *State v. Galaviz*, 104 Idaho 328, 658 P.2d 999 (Ct. App.1983), concluding that the Idaho legislature had intended that certain crimes, when committed with a firearm, should receive greater penalties than if no firearm had been used. We recognized that the legislature had adopted two statutes to achieve this result. We hold here, as we did in *Galaviz*, that the sentence imposed did not violate the double jeopardy clause of the fifth amendment.

B

■ We now turn to Metzgar's second argument that the enhancement of the assault sentence violated I.C. § 18–301. That statute provides:

> An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosectuion [sic] for the same act or omission under any other.

Metzgar insists the use of a firearm in the assault was "the same act" that also subjected him to the penalties of § 19–2520, in this case a five-year consecutive term.

Our Supreme Court held in *State v. Horn*, 101 Idaho 192, 610 P.2d 551 (1980), that the scope of § 18–301 exceeds the constitutional limitations of the double jeopardy clause of the fifth amendment. The Court explained:

> Under § 18–301 a defendant cannot be punished twice for the same *act*, rather than the same *crime*. If defendant's single action creates liability under two criminal statutes, defendant can only be punished under one statute. [Emphasis original.]

101 Idaho at 197, 610 P.2d at 556. We agree that it appears that Metzgar's act of using the firearm did subject him to the penalties for aggravated assault as well as the provisions of the enhancement statute. However, as we pointed out in *Galaviz*, any conflict between § 18–301 and § 19–2520 must be resolved in favor of § 19–2520, it being the more recent, special statute. 104 Idaho at 331, 653 P.2d at 1002. Section 19–2520 specifically applies "even in those cases where the use of a firearm is an element of the offense." The crime of aggravated assault is specifically enumerated within § 19–2520 as subject to sentence enhancement for the use of a firearm. We note that § 18–905, which defines aggravated assault does not require the use of a firearm. It only requires, among other things, a "deadly weapon or instrument." Our reading of § 19–2520 convinces us that the legislature clearly intended the punishment for aggravated assault committed with a firearm be subject to the enhancement provisions. We therefore hold that § 18–301 does not prohibit the enhanced sentence in this case.

We do acknowledge that there are differences between the definition of "firearm" in § 18–905 and § 19–2520. Section 18–905 includes "any firearm, though unloaded or so defective that it cannot be fired." Section 19–2520 however, "includes unloaded firearms and firearms which are inoperable but which can readily be rendered operable." However, § 19–2520 also requires that the firearm be capable of "propelling ... projectiles." We can foresee crimes where the firearm used is "so defective it cannot be fired" and therefore, brings a defendant within the ambit of § 18–905, aggravated assault, yet the gun does not come within the "readily ... rendered operable" requirements for the enhancement provisions of § 19–2520. Adding to the conflict is the fact that aggravated assault is an enumerated crime listed in § 19–2520. However, we need not resolve that conflict now. We affirm the judgment of the district court.

BURNETT and SWANSTROM, JJ., concur.